**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| BERRY CREEK RANCHERIA OF MAIDU INDIANS OF CALIFORNIA, | No. 07-CV-4023-DEO |
| Plaintiff, | |
| v. | **ORDER** |
| MAXINE BUCKMEIER, | |
| Defendant. | |

Before the Court is Defendant Maxine Buckmeier's Motion to Dismiss. Docket No. 49. Plaintiff Berry Creek Rancheria of Maidu Indians (the Tribe) has filed their Resistance to the Motion (Docket No. 53), to which Buckmeier has filed a Reply (Docket No. 54). A hearing was held on the Motion on December 1, 2009. Docket No. 57. As explained below, the Court will direct further briefing as to the issue of whether or not the Court has subject matter jurisdiction.

## I. INTRODUCTION

In her Motion to Dismiss, Buckmeier argues the Tribe has failed to state a claim upon which relief can be granted because: (1) the Tribe is not a "person" entitled to sue under 42 U.S.C. § 1983[1] since it is seeking to vindicate a

---

[1] 42 U.S.C. § 1983 provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or

sovereign right; (2) the Tribe's Amended Complaint (Docket No. 40) fails to plead sufficient facts to state a § 1983 claim; and (3) Buckmeier is not an actor under color of state law for § 1983 purposes.

The Tribe, on the other hand, maintains that it is seeking to vindicate a "quasi-sovereign right," and as such should be considered a "person" entitled to sue under § 1983. The Tribe contends its Amended Complaint, which alleges Buckmeier deprived the Tribe of federally-protected rights in her capacity as a "custodian" and "agency" under Iowa law, is adequately pled. Finally, the Tribe argues that, given her status under state law as a "custodian" and "agency," Buckmeier may fairly be said to be a state actor.

The arguments of the parties have missed an issue that this Court is persuaded must be further addressed. Although the foregoing questions are certainly implicated by the instant matter, the parties appear to have overlooked a more basic question: Whether Buckmeier deprived the Tribe of a

---

> usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

right "secured by the Constitution and [federal] laws . . . ." 42 U.S.C. § 1983. The parties seem to agree that the Tribe's § 1983 action is based on Buckmeier's alleged failure to properly notify the Tribe of voluntary adoption proceedings involving N.N.E., a minor child eligible for enrollment in the Tribe, in violation of the notice provision in the Indian Child Welfare Act (ICWA).[2] However, as set out below, the ICWA does not appear to confer on tribes, either expressly or implicitly, the right to notice of *voluntary* adoption proceedings. The Tribe's Amended Complaint does however suggest that it might alternatively be asserting that due process requires tribal notice of *voluntary* adoption proceedings, but it is not clear that the conclusory allegations giving rise to this suggestion state a claim under 42 U.S.C. § 1983. That is, it is not clear whether the Tribe has alleged the violation of any specific right under the United States Constitution. Because this Court's subject matter jurisdiction over this case turns on whether the Tribe can establish the violation of a *federal* right, the Court finds it necessary to have the parties further brief and then argue this issue. Cf. Kaur v. Makhan Shan Lubana Trust, No.

---

[2] See 25 U.S.C. §§ 1901-1963.

3

08-CV-3216, 2009 WL 1288961 (D. Neb. May 5, 2009) (finding the plaintiffs should be given an opportunity to respond to a jurisdictional question that was raised by the court sua sponte).

## II. DISCUSSION

The Tribe invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, which provides federal court jurisdiction in civil actions arising under the Constitution and laws of the United States, and 1367(a), which grants supplemental jurisdiction to the federal district courts over "all other claims that are so related to claims" over which the district court has original jurisdiction "that they form part of the same case or controversy under Article III." Docket No. 40 at 2, ¶ 5. Additionally, the Tribe requests that this Court exercise jurisdiction pursuant to 28 U.S.C. § 1343(a), which in relevant part parrots the text of 42 U.S.C. § 1983. Id. Hence, federal jurisdiction under 28 U.S.C. § 1343(a) — and, by extension, 28 U.S.C. § 1367(a) — hinges upon the existence of a substantial *federal* claim under § 1983. While the instant matter ostensibly involves Buckmeier's Rule 12(b)(6) Motion to Dismiss, it is axiomatic that a federal court has an obligation to inquire sua sponte into its own subject matter

jurisdiction. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### A. *ICWA*

In the ICWA, a distinction is made between ***voluntary*** and ***involuntary*** placement of an Indian child. Compare 25 U.S.C. § 1912(a) with 25 U.S.C. § 1913(a).³ This case involves a

---

   ³   25 U.S.C. § 1912(a), entitled "Notice; time for commencement of proceedings; additional time for preparation," provides:

> In any ***involuntary*** proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided*, [t]hat the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional

5

*voluntary* placement of an Indian child. See In re N.N.E., 752 N.W.2d 1, 10 (Iowa 2008) (noting that Edwards "has never wavered in her decision to terminate her parental rights since her first court appearance."). Although the ICWA requires notice to the tribe be given in cases involving *involuntary* foster care placement or termination of parental rights (see id. § 1912(a)), the Act does not specifically require notification to the tribe in a *voluntary* foster care or termination case.[4] See Dean v. United States, 129 S. Ct.

---

days to prepare for such proceeding.

Id. § 1912(a) (first emphasis added). In contrast, 25 U.S.C. § 1913(a), entitled "Parental rights; voluntary termination," contains no notice provision.

[4] The Iowa ICWA, on the other hand, requires that notice be given to "[a]ny tribe in which the child may be a member or eligible for membership" at least ten days prior to a voluntary placement proceeding. Iowa Code § 232B.5(8). Section 1983, however, authorizes the courts to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" that occur under color of state law. Id. § 1983. Section 1983 is thus limited to deprivations of *federal* constitutional rights and *federal* statutory and regulatory rights. It generally does not cover official conduct that violates only *state* law. See, e.g., Baker v. McCollan, 443 U.S. 137, 140 (1979) ("The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"). Accordingly, Buckmeier's failure to provide notice in the manner required by Iowa Code § 232B.5(8) does not, by itself, give rise to a § 1983 claim; rather, to avoid dismissal the Tribe must identify a *federal* right violated by Buckmeier.

6

1849, 1854 (2009) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting Russello v. United States, 464 U.S. 16, 23 (1983))). Thus, the ICWA does not provide an *express* right to notice to a tribe in cases such as this one involving the **voluntary** placement of an Indian child. The handful of courts that have addressed this question are unanimous on this point. See Navajo Nation v. Super. Court of the State of Washington, 47 F. Supp. 2d 1233, 1238 (E.D. Wash. 1999) (holding that, based on the plain language of the ICWA and the legislative history of the Act, "no tribal notice is required in voluntary adoption proceedings."); Catholic Soc. Servs., Inc. v. C.A.A., 783 P.2d 1159, 1160 (Alaska 1989) (per curiam) (holding that, based on the plain language of the Act, the ICWA does not require notice to a tribe of a voluntary adoption proceeding); see also In re Phillip A.C., 149 P.3d 51, 59, 60 n.44 (Nev. 2006) (noting, in dicta, that a tribe is not entitled to notice of a voluntary adoption proceeding under the ICWA).

Whether the ICWA confers upon tribes an *implied* right to

7

notice of ***voluntary*** placement proceedings — and, if so, whether such a right could be enforced through § 1983 — are somewhat more complicated questions.  In Gonzaga v. Doe, 536 U.S. 273 (2002), the Supreme Court concluded that a federal statute can be enforced under § 1983 only if Congress indicates "an unambiguously conferred right to support a cause of action brought under § 1983."  Gonzaga, 536 U.S. at 278-82; cf. Touche & Ross Co. v. Redington, 442 U.S. 560, 571-72, 575 (1979) (explaining that, in determining whether a statute implies a private cause of action, "[t]he central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action," and relevant to this inquiry is the language of the statute, its legislative history, and the legislative scheme of which the statute is a part).  Yet even if the Tribe is able to overcome the foregoing hurdles, its ability to enforce such a right through § 1983 may be foreclosed by, among other restrictions, the existence of a "comprehensive remedial scheme" in the statute. See Blessing v. Freestone, 520 U.S. 329, 341 (1997) ("Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983.  Because our inquiry

focuses on congressional intent, dismissal is proper if Congress 'specifically foreclosed a remedy under § 1983.' Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." (citations omitted)). Thus, even if the Tribe can establish an implied right to notice under the ICWA, Buckmeier can arguably avoid liability for her alleged violation of this implied right by showing that Congress created a comprehensive remedial scheme in the ICWA, and the remedies available within this scheme do not include the relief sought by the Tribe against her.[5]

While the Tribe is certainly free to submit additional argument to establish the existence and enforceability (through § 1983) of such a right, this Court has not found any reported cases in which a court has adopted this position. The "comprehensive remedial scheme" defense that may be available to Buckmeier, on the other hand, does appear to find

---

[5] The rule appears to be that, while the plaintiff bears the burden of showing that a statute contains enforceable rights, a defendant bears the burden of demonstrating that Congress intended to foreclose a § 1983 cause of action, whether expressly or impliedly, by the existence of a comprehensive remedial scheme. City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 120 (2005); Wright v. City of Roanoke Redevelopment and Hous. Auth., 479 U.S. 418, 423 (1987).

ample support in the case law: courts confronted with § 1983 claims based on alleged ICWA violations have found that the sole cause of action Congress intended to create in the ICWA was that provided in § 1914, which specifically allows a cause of action for invalidation of the underlying proceedings based on violations of §§ 1911, 1912, and 1913. See Doe v. Mann, 285 F. Supp. 2d 1229, 1240-41 (N.D. Cal. 2003) (reasoning that, "[i]n specifically allowing plaintiffs to seek invalidation of a state court's actions based on sections 1911, 1912 and 1913, Congress showed it knew how to create a remedy and did so expressly," and concluding that "Congress intended to provide a cause of action only for violations of [these] three ICWA sections.") (internal markings omitted); Navajo Nation, 47 F. Supp. 2d at 1242-43 (same). This Court expresses no opinion as to the merit of the foregoing potential positions of the parties. Rather, because the foregoing issues have yet to be addressed by the parties, the Court is reluctant to rule on the present record without first providing the parties with an opportunity for further briefing.

With the foregoing in mind, should the Tribe elect to proceed under the theory that it has been deprived of a right

protected by *federal law*, it must show that it has an implied right to notice of voluntary placement proceedings under the ICWA.[6] To establish that it has such a right, the Tribe must satisfy the three-part test set out in Blessing v. Freestone, 520 U.S. 329 (1997) and refined in Gonzaga v. Doe, 536 U.S. 273 (2002). First, the Tribe must demonstrate that Congress "unambiguously conferred [a] right to support a cause of action brought under § 1983." Gonzaga, 536 U.S. at 283. Second, it must also show that the right is not so "vague and amorphous that its enforcement would strain judicial competence." Blessing, 520 U.S. at 341 (citation omitted). Finally, the asserted right must be framed in mandatory rather than precatory terms. Id.

### B. *Due Process*

Although throughout its brief and oral argument the Tribe has maintained that it was entitled to notice under the ICWA, the Tribe's Amended Complaint suggests that it might alternatively be asserting that due process requires tribal notice. The Tribe's Amended Complaint provides, in relevant part, that "[t]he actions of Buckmeier . . . deprived the Tribe of rights secured to it by the Constitution and laws of

---

[6] Of course, the Tribe may rely on multiple legal theories to establish a deprivation of a federally-protected right.

11

the United States of America . . . [and] violated the substantive and procedural due process rights afforded to Indian Tribes under [the] ICWA . . . ." Docket No. 40 at 13-14. The Tribe's Amended Complaint also provides, parenthetically, that its claim against Buckmeier is based on her alleged "[v]iolation of 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment . . . ." Id. at 13.[7] These blanket assertions make it difficult to discern the constitutional violations the Tribe is asserting. The Tribe cites to no case holding that due process requires tribal notice of *voluntary* adoption proceedings, and this Court is not aware of any such precedent at this time. The handful of courts that this Court is aware of that have addressed the question have concluded that there is no constitutional right to tribal notice of *voluntary* adoption proceedings. See Navajo Nation, 47 F. Supp. 2d at 1239 (holding that "[n]either [the ICWA] nor the U.S. Constitution

---

[7] To the extent the Tribe relies on § 1983 as an independent basis for its action against Buckmeier, such reliance is misplaced. See, e.g., Gonzaga, 536 U.S. at 283 (explaining that, because "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States . . . [o]ne cannot go into court and claim a 'violation of § 1983' — for § 1983 by itself does not protect anyone against anything.") (internal citation omitted).

12

require notice to the [tribe] in the circumstances of this case where the adoption was voluntary and the child was not domiciled on the Reservation of the [tribe]."); <u>Catholic Soc. Servs., Inc.</u>, 783 P.2d at 1160 (same). However, as mentioned, because neither party has addressed this question, the Court declines to decide the issue without first providing the opportunity for further briefing.

With the foregoing in mind, should the Tribe elect to proceed under the theory that it has been deprived of a right protected by *the U.S. Constitution*, it must precisely identify the constitutionally-protected liberty or property interest so deprived. See <u>Ragan v. Lynch</u>, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In the context of procedural due process, this means the Tribe must identify a specific, articulable interest included within the Fourteenth Amendment's protections for property or liberty, which may not be deprived without adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner. See <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). In the context of substantive due process, this means the Tribe must identify a specific, articulable fundamental

13

liberty interest protected from state interference, no matter what process is given, unless the infringement is narrowly tailored to achieve a compelling state interest. See Reno v. Flores, 507 U.S. 292, 301-302 (1993). Of course, the foregoing requirements are not exhaustive.

Indeed, neither these directives, nor those concerning the basic requirements for pleading the existence and enforceability of a federal statutory right (supra pp. 10-11), should be considered all-encompassing. Rather, the Court here has merely attempted to, on the one hand, sketch out some of the deficiencies in the Tribe's claims (deficiencies which, in the Court's view, render this Court's subject matter jurisdiction over the matter questionable), and on the other hand briefly explain how these deficiencies might be remedied. The Court's endeavor in this regard is in no way intended to benefit one party to the detriment of the other. Rather, the Court is simply alerting the parties to threshold issues that not only implicate subject matter jurisdiction, but are also of substantial significance in terms of fairly analyzing the viability of the Tribe's claims.

In sum, neither the Amended Complaint nor the Tribe's subsequent submissions seem to provide sufficient clarity

about the pending claims to allow this court to now determine whether subject-matter jurisdiction exists. The Court, as mentioned, is reluctant, in the absence of meaningful adversarial argument on the issue, to rule definitively, and will therefore reserve ruling on the subject pending further briefing by the parties.[8] The Court directs the Tribe to submit a Supplemental Memorandum that addresses the issues identified in this Order and answers the following question, *with citation to supporting legal authority*:

> 1. What is the specific (federal) statutory or constitutional basis for each § 1983 claim against Buckmeier, and has the Tribe satisfied all pleading requirements and met all jurisdictional conditions associated therewith? For example, if the Tribe is asserting a § 1983 claim based on a federal statute, does that federal statute confer an individual right of action (that is, does it satisfy the three-part Blessing/Gonzaga test)[9] so as to

---

[8] Given the foregoing analysis, the Court will defer consideration of Buckmeier's arguments that: (1) the Tribe is not a "person" entitled to sue under § 1983 since it is seeking to vindicate a sovereign right; (2) the Tribe's Amended Complaint fails to plead sufficient facts to state a § 1983 claim; and (2) Buckmeier is not an actor under color of state law for § 1983 purposes. These issues will be addressed following submission of additional argument concerning the issues identified in this Order. The Court will likewise defer its determination as to whether it will exercise supplemental jurisdiction over the Tribe's state law claim pending further briefing.

[9] See supra p. 11.

15

>     enable the Tribe to state a cognizable §
>     1983 claim and, in turn, satisfy the
>     "arising under" requirement of federal
>     question jurisdiction?

The Court will defer ruling on Buckmeier's Motion to Dismiss until after the Tribe submits their Supplemental Memorandum, Buckmeier submits her Response, and the Tribe submits a Reply (if any). At that point, the Court will consider all issues, including those already briefed and argued by the parties (<u>see</u> <u>supra</u> p. 15, n.8), related to both subject-matter jurisdiction and Buckmeier's Motion to Dismiss.

### III. CONCLUSION

For the foregoing reasons, the Court **orders** further briefing and **reserves ruling** on Buckmeier's Motion to Dismiss (Docket No. 49). The Tribe shall submit by March 18, 2010, a Supplemental Memorandum that addresses the issues identified in this Order and answers the question listed above (<u>supra</u> pp. 15-16) in this Order. Buckmeier shall submit her Response by April 2, 2010; and the Tribe shall submit a Reply (if any) by April 7, 2010. All briefs shall cite (including pincite) to supporting legal authority, and shall not exceed twenty-five (25) double-spaced pages.

**IT IS SO ORDERED** this 3rd day of March, 2010.

_Donald E. O'Brien_
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa